UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SCOTT CUNHA,<br><br>Defendant. | Case No. 25-cr-10301-MJJ |

## SENTENCING MEMORANDUM OF THE UNITED STATES

On October 2, 2025, defendant Scott Cunha pled guilty to an Information charging him with Sexual Exploitation of Children in violation of 18 U.S.C. §§ 2251(a) and (e). The defendant's sentencing hearing is scheduled for February 19, 2026. The government requests a sentence of 180 months imprisonment, a five-year period of supervised release, a fine as determined by the Court, and the mandatory financial assessment. The government is not seeking restitution in this case.

### I.     THE OFFENSE

Cunha persuaded, enticed, and coerced a 15-year-old girl (Minor 1) to engage in sexually explicit conduct for the purpose of producing photos and videos to send to him. PSR ¶¶ 11-31. Cunha promised Minor 1 money in exchange for sending him sexual images, enticing her to send him images of her 15-year-old nude body (PSR ¶¶ 20-31), images of her engaging in masturbation (PSR ¶¶ 17, 20-22, 24, 31), and images of her inserting objects into her body (PSR ¶¶ 30). Cunha instructed Minor 1 to create this child sexual abuse material (CSAM) with a cell phone and to send the CSAM to him via Snapchat. PSR ¶ 9.

Unfortunately Minor 1 was not the only child that Cunha victimized. Cunha exploited other 14-16-year-old girls, including Minors 2 and 5, persuading them to engage in sexually explicit conduct on camera and to send him the images via Snapchat. Cunha also attempted to persuade his minor victims to meet him in person for commercial sex acts, and he convinced a 13-year-old girl

(Minor 3) to meet him at a mall. PSR ¶ 56. During that meeting, he attempted to touch and kiss the 13-year-old. *Id*.

Cunha called his minor victims sluts (PSR ¶¶ 20, 27, 37) and reprimanded them when they did not comply with his demands or did not send photos when he wanted them (PSR ¶¶ 30, 37, 41, 71). He also ordered his minor victims to sexually "degrade" themselves for him in videos (PSR ¶ 22, 37).

Cunha's minor victims told Cunha that his exploitation was harming their mental and emotional health. For example, Minor 1 told Cunha she was sending him images because she needed the money he had promised to pay her for the images, even though it made her anxiety worse, stressed her out, and harmed her mental health. PSR ¶¶ 20, 25. Minor 3 told Cunha that his constant demands for photos made her "feel like nothing." PSR ¶ 48.

## II. GUIDELINES ANALYSIS AND CRIMINAL HISTORY

On October 2, 2025, Cunha pleaded guilty to an Information charging one count of child exploitation in violation of 18 U.S.C. §§ 2251(a) and (e). Cunha pleaded guilty pursuant to a plea agreement under Rule 11(c)(1)(C) and the parties agreed to recommend a sentence of 180 months in prison. ECF No. 22. The plea agreement also contains a stipulated guideline calculation, concluding that Cunha's total offense level is 36. *Id*. The guideline calculation in PSR mirrors the calculation in the parties' plea agreement. PSR ¶¶ 83-115.

The stipulated guideline calculation in the plea agreement does not include an enhancement under U.S.S.G. § 2G2.1(d)(1), which states that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as it the exploitation of each minor had been contained in a separate count of conviction." The parties did not discuss whether U.S.S.G. § 2G2.1(d)(1) applied in this case when negotiating the plea.

2

In the Initial PSR, U.S. Probation applied U.S.S.G. § 2G2.1(d)(1), adding four points for additional victims and then calculating a total offense level of 40. The government did not contemplate whether section 2G2.1(d)(1) applied to this case prior to reviewing the Initial PSR. The defendant timely filed an objection to the Initial PSR, arguing, *inter alia*, that "the information about Mr. Cunha's contact with individuals other than Minor 1 should not be treated as separate counts under U.S.S.G. 2G2.1(d)(1) because it is not relevant conduct." *See* PSR page 38. In response, U.S. Probation engaged in further research and ultimately agreed with the defendant in the Final PSR that U.S.S.G. § 2G2.1(d)(1) did not apply to the evidence in this case because it is not relevant conduct because it did not temporarily occur "during the commission of the offense of conviction." *See* PSR at pages 38-39.

The government stands by the plea agreement and agrees with U.S. Probation that the available evidence does not show a temporal overlap between the precise dates on which Cunha solicited and received CSAM from Minors 1, 2, and 5. Therefore the government is not asking the Court to apply U.S.S.G. § 2G2.1(d)(1) in this case. Importantly, however, the facts of this case are unique, and if the available evidence were slightly different, section 2G2.1(d)(1) would likely apply.

Those who engage in online child exploitation almost always do so in a continuous and ongoing manner. Indeed the evidence in this case indicates that Cunha was regularly and consistently grooming different minors in an effort to solicit and entice them to send CSAM to him. Again the government stands by the plea agreement and maintains that it is fair and appropriate, but if that were not the case, the government might have argued that the defendant's early exploitation and attempted exploitation of one minor victim was "relevant conduct" for purposes of section 2G2.1(d)(1) because it constituted preparation for his later exploitation of different minor victims. *See* U.S.S.G. § 1B1.3(a)(1), defining relevant conduct as "all acts and omissions committed ... or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, *in preparation*

3

*for that offense*, or in the course of attempting to avoid detection or responsibility for that offense." (emphasis added).

In addition, individuals who solicit, collect, and possess CSAM often receive sexual gratification, stimulation, and satisfaction from viewing their collection of CSAM and may use these materials for their own sexual arousal and gratification on a repeated basis. Therefore even if a defendant solicited and received CSAM from different minors during different timeframes, it is certainly possible that a defendant would view the CSAM he collected from one minor on dates after he initially received it. This revictimization could happen weeks, months, or even years after the minor ceases communication with a defendant.

Regardless of the Court's determination as to Cunha's guideline calculation, the government recommends that the Court accept the parties' plea agreement and impose a sentence of 180 months. As set forth below, this is an appropriate sentence in this case under the factors set forth in 18 U.S.C. § 3553(a) and provides a just resolution.

### III.    SECTION 3553(a) FACTORS

The government's recommended sentence accounts for the factors that the Court must consider under 18 U.S.C. § 3553(a). The factors include, but are not limited to, the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities.

Consideration of the §3553(a) factors demonstrates a sentence of 180 months is the appropriate sentence in this case. Foremost among those factors is the nature of this child exploitation offense, as well as the harm to the victims whose child sexual abuse material Cunha possessed.

### A. The Nature of the Offense

By hiding behind an electronic device and using the internet, Cunha victimized and exploited minor children over and over again. Real children have been victimized by Cunha's actions and by others like him who either fail to appreciate that children are not for sale and not for sex, or are aware of this fact and yet choose to ignore it in pursuit of their own sexual gratification.

In examining the seriousness of the offense, the Court must review the harm to the victims. *See United States v. Cunningham*, 680 F. Supp. 2d at 844, 855 (N.D. Ohio 2010). Tragically, Cunha's actions taught vulnerable teenage girls that their only worth was in their naked bodies or through commercial sex acts. He called them sluts and explicitly instructed them to "degrade" themselves in sexual photos and videos for him. Cunha ordered his 14 and 15-year-old victims to pose in very explicit sexual positions and engage in specific sexual acts, including masturbation, on camera. After meeting with a 13-year-old girl in person, he also tried to convince her to have sex with him for money. While Cunha was exploiting and attempting to exploit these young victims, the victims were telling Cunha that his demands were stressing them out and causing them anxiety, depression, and discomfort.

Each time a sexually explicit image or video of a child is viewed, accessed, possessed, received, or produced, that minor child is being revictimized. Victims of child exploitation typically suffer physical harm, including panic attacks, illness, anxiety, trust issues, and intimacy challenges, because of people like Cunha who support child abuse by seeking sexual gratification through voyeurism. In addition to his online exploitation, Cunha sought to further sexually abuse and harm children, both by attempting to physically access 13-year-old Minor 3 at a mall and in asking other minor girls to meet him in person to engage in commercial sex acts.

### B.     The Need for General Deterrence

The minor victims in this case are not abstractions or objects—they are real people who experienced sexual exploitation when photos or videos of them were solicited, produced, received, possessed, and accessed. This is precisely why Congress imposed a 15-year mandatory minimum sentence for this conduct. This significant term of imprisonment reinforces to the defendant and to others who are tempted to follow in his footsteps that these crimes are exceedingly grave in nature and warrant punishment. The 15-year sentence also serves as a deterrent and would promote respect for the law and protect the safety of the public, and in particular, children, who are the most vulnerable victims in our society.

Imposing serious penalties on those who receive and possess child pornography serves the interests of all the minor victims in this case. The sentence sends the message to members of the public that children's bodies are not for sex or for sale.

### C.     Characteristics of the Defendant

The government decided forego additional charges and agree to a sentence of 15 years – exactly the mandatory minimum, after taking into account some of Cunha's unique characteristics that render this sentence just and appropriate. First, Cunha was 23 years old when he committed the offense for which he was convicted. While he was an adult and certainly his age is not an excuse for exploiting children, the fact that he was in his early 20s is a mitigating factor. Second, Cunha almost immediately accepted responsibility for his actions and pleaded guilty to an Information. For those reasons, the government submits that a slightly below-guidelines sentence of 180 months is appropriate and just.

### D.     Supervised Release, Fine, and Restitution

A minimum term of five years of supervised release is mandatory. 18 U.S.C. § 3583(k). If the Court determines that the defendant has the ability to pay, the government requests that the Court

order the defendant to pay the JVTA and AVAA assessments. The government has not received any restitution claims from victims.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court accept the parties' plea agreement and sentence defendant Scott Cunha to serve 180 months in prison, followed by 60 months of supervised release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   */s/ Torey B. Cummings*
TOREY B. CUMMINGS
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney


Date: February 5, 2026