UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 25-CR-10301-MJJ |
| | ) | |
| | ) | |
| SCOTT CUNHA | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### I. Introduction

Scott Cunha committed a very serious offense. He is now prepared to accept a devastatingly serious consequence. He is 25 years old, has no criminal history of any kind, but has agreed with the government to recommend a 15-year federal prison sentence. Given his age, early acceptance of responsibility, lack of criminal history, and the other statutory sentencing factors, 15 years in prison and five years of supervised release for Scott Cunha is "sufficient but *not greater than necessary*" to achieve the goals of sentencing. 18 U.S.C. § 3553(a)(1)(emphasis added). Following the guidance of the First Circuit, it is a "sentence that is *minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez,* 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

### II. A fifteen year federal prison sentence will be a life-changing event for Scott Cunha that more than accomplishes the purposes of sentencing.

Scott Cunha is 25 years old. He was 23 when he committed the offense. PSR ¶ 11. He has never previously been charged with a crime, let alone been incarcerated. PSR ¶¶ 117-122.

He was arrested for this offense on January 23, 2025. PSR ¶ 1. Within a few weeks he agreed

to extend the time to Indictment because he immediately acknowledged that what he did was very wrong and he was prepared to accept serious consequences. D.E. 14.  Resolution discussions were thorough, given both the seriousness of the crime and the severity of the potential consequences, and so Scott agreed to extend the time to Indictment two more times. D.E. 15, 16. Those discussions were concluded within six months of his first ever arrest when he agreed with the government that he should spend the next 15 years of the adult life that he had just started behind bars. D.E. 17, 22.

Typically the criminal justice system employs a system of graduated consequences. First-time offenders almost always receive lesser consequences than repeat offenders consistent with the parsimony principle that a sentence should be "sufficient, but not greater than necessary" to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). Shorter sentences for first-time offenders in general are sensible because they serve the purpose of deterrence and rehabilitation by allowing those offenders to demonstrate that they have learned the intended lesson. Repeat offenders receive increasing consequences when their recidivist behavior demonstrates that their prior sentences were not sufficient. These general principles are undisputed and underlie the criminal history calculations of the Sentencing Guidelines.

Scott Cunha is an exception to this widespread, sensible practice. He will not have the opportunity to correct his behavior after any sentence less than 15 years because his conduct was so serious it supports the 15-year mandatory minimum that Congress imposed in 18 U.S.C. § 2251. There should be no question, however, that a 15-year sentence for this defendant and this offense is "sufficient, but not greater than necessary."

Scott Cunha will not be at liberty until that extremely long sentence is over. He will not ever

have true privacy during the entire time he is behind bars. He will be told what to eat and when to eat it. He will only be able to be with his family under the watchful eye of prison guards in a communal visiting room. Close family members will pass away while he is in prison. New family members may be born. For every important life event, Scott Cunha will be unable to grieve or celebrate with his family.

The consequences of a 15-year sentence will extend far beyond the actual period of incarceration. At 25, Scott Cunha is at an age when he should be furthering his education or beginning a career. He should be developing adult life skills like paying bills, navigating the job market, and building a credit score. He should be building romantic relationships and a network of supportive friends. All of those critical elements of adulthood will be delayed into his late 30s, when it certainly will be possible, but exponentially harder, for him to build a life. The basic facts of a 15-year sentence demonstrate that it will be a life-changing event for Scott Cunha, one that he will always know was the result of his own behavior. These basic facts of incarceration show that deterrence, just punishment, and protection of the public are all sufficiently supported by the jointly recommended sentence.

### III. Scott Cunha was neglected as infant, which led to a life of serious challenges that he and his loving family have worked hard to address.

Scott Cunha was born into circumstances which no child should endure. PSR ¶ 124. He and his twin brother's biological parents were unable to care for them due to court involvement and addiction. Id.  The boys were placed into foster care as infants, but even then did not receive the care they needed, leading to developmental delays and malnourishment. Id. Although the boys were adopted by a loving couple at nine months old, those critical early-life experiences had

long-term consequences. Throughout Scott's childhood he required various special education services, including speech therapy, physical therapy, and occupational therapy. Id. Mainstream schools were unable to meet his complicated needs and he struggled with school attendance, social isolation, and emotional difficulties. PSR ¶ 137. His parents kept trying new interventions by sending him to several different specialized residential schools, including in New Hampshire, Utah, and Florida. PSR ¶¶ 137, 150, 152. Given all these difficulties and frequent changes throughout his childhood, it is no surprise that Scott has struggled with depression throughout his life. PSR ¶ 137.

It is not hard to see a connection between Scott Cunha's chronic struggles with depression and social isolation and his commission of this offense that clearly displayed a lack of empathy for the victim. This connection is not an excuse or defense. Although he himself struggled with shame, isolation, and depression, his conduct caused those same consequences for the victim. His conduct calls for a serious sentence under any circumstances. His "history and characteristics" though, are a required consideration under § 3553(a), and the defense submits that they are a mitigating factor that at the very least demonstrates that it is not "necessary" for Scott Cunha to receive a sentence any longer than 15 years.

Despite the serious challenges of his childhood, with the support of his parents and an extended loving family Scott Cunha has been able to accomplish important goals. Even with so many school changes, he graduated from high school. PSR ¶ 152. He started working at 18 years old while still in high school and obtained three different full-time jobs after graduating. PSR ¶¶ 156-159. He was involved in an age-appropriate relationship for two years, from ages 18 to 20. PSR ¶ 132.

Scott has also been a valuable member of his family and community. He is particularly close to his elderly grandmother and regularly spends time with her, including bringing her to medical appointments, to church, and to run errands. PSR ¶ 128. He has also volunteered at food pantries and helped train service dogs. Id.

Despite his conduct in this case, Scott Cunha clearly does care for others and is more than capable of rehabilitation. Indeed, he has begun his rehabilitation even before being sentenced, having completed several courses during his pretrial detention, including computer skills, financial literacy, and resume writing. PSR ¶ 155. In addition to these courses which are regularly offered by the facility, Scott and his family took the initiative to arrange for him to be able take an accounting course through Mass Bay Community College. Id. This required convincing the sheriff's department to allow him access to the computer room during the morning while it was unoccupied and persuading a counselor to supervise him while he took the course. Counsel is unaware of other any other defendant or family who were able to arrange for an individualized college course in this manner. Scott also currently participates in counseling with his pastor and wants to participate in mental health treatment should that relationship be interrupted by his incarceration. PSR ¶ 139. All these efforts show that both Scott and his family are firmly committed to continuing his adult development as much as possible despite his incarceration.

Scott Cunha's family is fully aware of the gravity of his offense yet remain fully supportive of him. PSR ¶¶ 127-130. This bodes well his ability to move forward with his life while incarcerated and to reintegrate into society upon his eventual release. He is fortunate that he will not have to serve his sentence or remake his life entirely on his own. This strong family support,

already demonstrated by a commitment to rehabilitation, shows that there is little evidence that Scott Cunha will present a threat to the public after his sentence, and thus that 15 years is a sufficient sentence.

### IV.  Conclusion

As demonstrated above, 15 years incarceration followed by five years supervised release is an appropriate sentence based on Scott Cunha's age, early acceptance of responsibility, history and characteristics, lack of criminal history, and the nature and circumstances of the offense. It is only 8 months below the advisory guidelines range. PSR ¶ 166.  It is a sentence which will run until Scott is in his late 30s and will impose striction conditions on him even after he is released. For all these reasons, the joint recommendation is one that is "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).

> Respectfully submitted,
> SCOTT CUNHA
> by his attorney
> */s/ Joshua Hanye*
> Joshua Hanye, BBO#661686
> FEDERAL PUBLIC DEFENDER OFFICE
> 51 Sleeper Street, 5th Floor
> Boston, MA 02210
> 617-223-8061

### CERTIFICATE OF SERVICE

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: February 6, 2026                                     */s/ Joshua Hanye*
                                                            Joshua Hanye